# STATE v. J. W. KEARNS.[1]

### December 21, 1917.

### No. 20,656.

**Criminal law — gambling — charge to jury.**

> The charge of the court discussed the evidence and indulged in inferences to a greater extent than is commendable, but it emphasized to the jury that all questions of fact were for their determination and impressed so strongly that if certain contentions of defendant were true they must acquit, that this court cannot say there was error prejudicial to the defendant.

Defendant was indicted by the grand jury of Polk county for the crime of permitting a gambling device to be set up on certain premises, tried in the district court before Watts, J., and a jury which found defendant guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, and *G. A. Youngquist,* County Attorney, for respondent.

HALLAM, J.

Defendant was convicted of the crime of permitting a gambling device or gaming table to be set up and used upon his premises at which the game of poker is played. The evidence was conflicting. The defendant "does not upon this appeal question the sufficiency of the evidence to support the verdict." The only objection raised is to the charge of the court. To understand the charge it is necessary to note some of the evidence.

Defendant conducted a pool room in East Grand Forks. Soft drinks, confectionery and cigars were sold. The place was "open all night." In the rear of the pool room was a card room with four public card tables. The evidence varies as to the kind of games played there and as to the extent to which stakes were played for there. This is not of great

[1]Reported in 165 N. W. 480.

importance, for the case of the state rests upon evidence that tables were set up and used for gambling in a large front room in the basement. This room extends to the front property line. Adjoining it and under the sidewalk is another connecting room. Beyond that and in the street are the usual gas mains. Just how near these were to the outside wall does not appear. Defendant's evidence is that there was formerly a gas connection from the street to the building but that, before this offense is charged to have been committed, the gas had been shut off in the street "outside the curb." These facts are material in this way. Several witnesses for the state testified to being in this room for as much as 2 hours and that gambling was carried on there. Defendant denied this and testified that this room had for years been so permeated with gas from a leak in the gas main in the street that no one could sit in it for any considerable length of time. A local physician and the sheriff testified that they were in this room at times later than the time of the offense charged and that when they were there the room was so permeated with gas that a person could not stay there 2 hours.

The judge in his charge to the jury instructed them clearly that they were the exclusive judges of all questions of fact and instructed them properly as to the presumption of innocence and the degree of proof necessary to establish guilt. Referring to the testimony he said that, "the testimony of Dr. Kirk and Sheriff Kelly" and others "would very strongly show that the gas in that room was so strong when they were there, that it would be impossible that persons could play cards as the witnesses on the part of the state say they did, in that room," and that, if gas was there at all times as these witnesses testified it was, "then the witnesses for the state are either mistaken or wilfully falsifying when they stated they were in there and played cards for a couple of hours," and then he told them it was for them to say whether there was gas in that room continuously as claimed on the part of the defendant, "or whether or not the testimony on the part of the defense, as they give it, itself, throws suspicion upon the honesty of their case. Use your own common sense with regard to that. The testimony of Mr. Kearns is, in explaining where the gas comes from, that the gas main in the street in front of these premises burst some time ago and there was a leak in it, and that there was manure filled in the street there, and, if I remember his testimony

right, he claims that the gas comes from that. Well, now, will gas come through a wall, if there are no cracks in the wall? Use your common sense and what you know of things, and know of that—would gas go through from the street, into this building unless there were cracks in the wall, and if there were cracks in the wall which permitted it to go through and into the building, how much trouble would it be to fill up those cracks and keep any gas from coming in? Use your common knowledge and common sense with regard to that, and decide whether or not anybody owning such a building as is described in the evidence here belongs to the defendant, leave it so that gas could come into the building itself and leave the rooms in it, such as witnesses found the room when they were in it, that is, this room where the witnesses on the part of the state claim the gambling was done. Would any person, with what trouble there would be necessary to keep the gas out of it, permit it to come in and make the room so that people would find it very disagreeable to stay in it?" And he concluded: "If the claim on the part of the defendant is correct, that gas was in there all times the same and was not fixed so it could be controlled or let in or shut off at any time, the verdict would be in favor of defendant, but if you find that the testimony on the part of the defendant, from your own experience and good judgment, would rather indicate that it shows dishonesty in their defense, then you should take that in consideration in deciding the case.

"So on the whole, if you are satisfied from the evidence in the case beyond a reasonable doubt that the defendant is guilty you should find the verdict" of guilty.

It is claimed this charge was argumentative and did not allow the defendant a fair trial and a free and untrammelled verdict by the jury. The charge is not to be commended. In much detail it indulges in inferences that might be drawn in favor of both the state and the defendant. Still the court emphasized that all questions of fact were for the jury and impressed upon them so strongly that they must acquit if defendant's testimony as to the constant presence of gas was true, that we cannot say there was error prejudicial to the defendant. State v. Yates, 99 Minn. 461, 109 N. W. 1070, and State v. Jones, 126 Minn. 45, 147 N. W. 822, cited by defendant were quite different.

Order affirmed.