ANTHONY J. FAUST, BY WILLIAM P. FAUST, FATHER AND NATURAL GUARDIAN,[1] v. RAYMOND PRZYBILLA.

77 N. W. (2d) 737.

June 1, 1956—No. 36,795.

---

[1]Although the record does not show it, the parties agree that by stipulation plaintiff, at the trial, being of age, carried on the action himself and not through his father as natural guardian. At the trial he also sought recovery of his property damage.

*Sexton, Tyrrell & Jardine,* for appellant.
*Attell P. Felix,* for respondent.

DELL, CHIEF JUSTICE.

This is an appeal from an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

On November 14, 1950, at about 6:15 p. m., plaintiff was riding his whizzer bicycle in a southerly direction on Main Street in Pierz, Minnesota, when he struck the rear end of defendant's disabled 1½-ton 1946 Chevrolet truck. The truck was parked at an angle on the west side of the street facing southwest with its front end about eight feet from the curb and its rear end near the center line of the street. Parallel parking is required in Pierz. The truck, driven by defendant, became disabled about 3:30 p. m. that day and had remained in the identical position from then up to the time of the accident. It had a platform body about 22 feet long, 7½ feet wide, and was painted a dark color, evidently green. The weather on that day was clear and the street surface was dry. It was totally dark at the time of the accident and the street lights in the village were on. However, the lights on the truck were not on nor were there any signals or flares of any kind set out to warn of its presence.

The block in which the accident occurred is a rather long one in which private residences and church properties are located. It runs between the north and south business districts of Pierz. Measuring from curb to curb, the street is about 60 feet wide, and it has a tarvia surface. Approaching from the north the street rises substantially reaching a crest at about the middle of the block and then drops off quite sharply to the south. In the middle of the block at the crest of the hill a street light projected out on an arm from a telephone pole

located on the west side of the street. It was described by the plaintiff as "the old tin reflector type" and consisted of an electric light bulb placed within a porcelain reflector which cast a beam downward onto the street in cone formation at an estimated 45-degree angle, illuminating a circular area. There was also a street light located at the north end of the block and another about 150 feet north of the south end of the block, both of which were also on the west side of the street. In between the circular areas illuminated by these street lights there were dark areas in which people or vehicles could not be discerned without the use of headlights.

The whizzer bicycle plaintiff was riding was propelled by a small, single-horse engine. It had a regulation sealed beam headlight mounted on the handlebars. Plaintiff testified that under normal conditions the light was sufficient to reveal a person or vehicle at a distance of 350 feet when on high beam and at 275 feet when on low beam. The bicycle was in perfect operating condition at the time of the accident. Plaintiff testified that just prior to the accident he was traveling at a speed of 15 miles per hour and was looking straight ahead; that his headlight was on low beam; that, when he was within or to the north of the area illuminated by the street light located in the middle of the block, the beam from his headlight blended in with and did not penetrate through or beyond the rays reflected from the street light. In describing the accident he stated: "I passed through the street light and back into darkness and bang!! That is when it happened." The bicycle struck the left rear end of the truck, which was the part of it protruding farthest into the street. There was evidence that a car approaching from the south with its headlights on was in the act of passing the disabled truck at the time plaintiff collided with it. The facts are stated only in the light most favorable to the verdict.

Plaintiff instituted this action to recover for his personal injuries and property damage suffered as a result of the accident. At the close of the testimony defendant moved for a directed verdict in his favor on the ground that it appeared as a matter of law that plaintiff was guilty of contributory negligence but the motion was denied.

The jury returned a verdict in favor of plaintiff in the sum of $4,500. Since the amount of the verdict is not questioned, the injuries will not be described.

The defendant's negligence is not in issue. The only issue raised on this appeal is whether plaintiff was guilty of contributory negligence as a matter of law. The defendant's position is that plaintiff's negligence appears as a matter of law in that the record here shows either that he failed to drive at a speed permitting him to stop within the range of his vision, or that he failed to keep a proper lookout, or that he was driving with a defective headlight.

There was no showing in the instant case that plaintiff was driving at a rate of speed which prevented him from stopping his bicycle within the range of his headlight.[2] In fact, the contrary clearly appears. Plaintiff testified that traveling at 15 miles an hour, as he claimed he was just prior to the accident, he could have stopped within approximately four feet. There is nothing in the record tending to contradict or refute this testimony. Thus, although plaintiff was traveling at a rate of speed that would have permitted him to stop in time to avoid the accident if he had seen the truck, he claims that the surrounding circumstances and conditions at the time were such that he was unable to make a timely discovery of the truck in order to avoid colliding with it.

In a case such as the instant one the surrounding circumstances and conditions must be considered in determining whether the driver adhered to the standard of care to be expected from a reasonably prudent person.[3] This court has expressly rejected the policy of applying arbitrary standards of behavior without regard to the

---

[2] Even though this is a factor to be considered in determining the question of negligence, in Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 159, 69 N. W. (2d) 104, 106, we stated: "There has never existed in this state any hard and fast rule that one who drives a motor vehicle at such a rate of speed that he cannot stop within the range of his headlights is negligent as a matter of law."

[3] Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 69 N. W. (2d) 104.

surrounding circumstances.[4] It is elementary that ordinarily the issue of contributory negligence is for the jury and that it is only where the evidence is so clear and conclusive as to leave no room for differences of opinion among reasonable men that the issue of contributory negligence can be decided by the court as a matter of law.[5] As we stated in Hardy v. Anderson, 241 Minn. 478, 481, 63 N. W. (2d) 814, 817:

"* * * A litigant before seeking reversal on the ground of contributory negligence as a matter of law should always bear in mind that a driver's conduct which under normal circumstances would constitute negligence as a matter of law may, nevertheless, give rise to a question of fact *when surrounding conditions and circumstances exist* which obscured the vision of such driver and prevented him from making a timely discovery of the impending danger * * *."

On the entire record before us, it cannot be said that the plaintiff was shown to be guilty of contributory negligence as a matter of law. From the evidence before it the jury could reasonably find that, because of the color of the unlighted truck, the absence of lights, flares, and warning devices, its location just south of the crest of a hill on a pronounced descending slope beyond the circle and area illuminated by the street light in the middle of the block, and its failure to cast a shadow, it was especially difficult to detect, particularly since it had a tendency to blend in with the color of the street;[6] that, even though plaintiff's headlight clearly met the statutory standard,[7] because of the peculiar circumstances, conditions, and

[4]Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 69 N. W. (2d) 104.

[5]Jablinske v. Eckstrom, 247 Minn. 140, 76 N. W. (2d) 654.

[6]When the object or vehicle parked on the road is of a color similar to that of the road and blends in with it in appearance, this court has held that that is a factor which tends to prevent a timely discovery of the object. See, Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Johnson v. Kutches, 205 Minn. 383, 285 N. W. 881.

[7]M. S. A. 169.60(3) provides: "All road lighting beams shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least 100 feet ahead."

lighting facilities existing at the place where the collision occurred, plaintiff was unable to discover the impending danger in time to avoid the accident.

The decisions cited by defendant[8] are distinguishable from the instant case. In those cases there were no circumstances or conditions shown to explain, excuse, or justify plaintiff's conduct. Moreover, we have tried to make it clear that Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42, is no longer to be considered as an authority except in the limited field covered by the facts of that case.[9]

Affirmed.

---

[8]Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42; Gordon v. Pappas, 227 Minn. 95, 34 N. W. (2d) 293; Bagan v. Bitterman, 65 N. D. 423, 259 N. W. 266; Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 69 N. W. (2d) 104.

[9]Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 162, 64 N. W. (2d) 530, 534; Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 69 N. W. (2d) 104.